UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
|    Plaintiff, | § | |
| | § | |
| v. | § | CRIMINAL NO. 6:15-30 |
| | § | |
| WILLIAM CHANCE WALLACE, | § | |
|    Defendant. | § | |

## MEMORANDUM OPINION & ORDER

Defendant William Chance Wallace was indicted for being a felon in possession of a firearm and ammunition, to wit: a "Bersa Thunder" .380 semi-automatic pistol, 14 rounds of "Hornady Zombie-Killer" .380 caliber ammunition, and 1 round "Winchester Super X" .22 magnum caliber ammunition. Pending before the Court are Defendant's Motion to Suppress and Exclude Evidence (D.E. 29), First Amended Motion to Suppress (D.E. 37), and Memorandum of Law in Support (D.E. 40), to which the Government has responded (D.E. 32, 38).

### I. Background

An evidentiary hearing on Defendant's motion was held on December 21, 2015, during which Texas Department of Public Safety (DPS) Special Agents Shawn Hallett and Jose Rodriguez testified. The following facts are taken from their testimony, the exhibits entered into evidence, and the Parties' briefing.

Sometime in early 2015, a confidential source of information (SOI) notified SA Hallett that Defendant was a Puro Tango Blast gang member, had an open warrant for his arrest, and was living in Austin, Texas. The informant also provided an Austin-based cell phone number for Defendant. SA Hallett, who is with the DPS Criminal Investigations Division, searched his database and confirmed that Defendant had an outstanding warrant for unlawful delivery of a

controlled substance issued in Victoria County, Texas. Because of Defendant's alleged gang affiliation, SA Hallett contacted SA Rodriguez with the DPS Gang Unit in Austin. SA Rodriguez spoke with an investigator in Victoria and conducted his own investigation into Defendant's criminal background and possible whereabouts.

On May 6, 2015, SA Rodriguez prepared a Peace Officer's Affidavit for Court Order seeking information related to Defendant's cell phone, which stated in part:

> Texas Department of Public Safety, Criminal Investigations Division, Gang Unit are attempting to locate a violent fugitive felon as defined by the Texas Penal Code, Chapter 38.01; William Chance WALLACE.
>
> WALLACE is a confirmed Puro Tango Blast (PTB) gang member through the TXGANG database.
> ***
> WALLACE currently has an active warrant for unlawful delivery of a controlled substance in PG1, 4 grams to 200 grams, Warrant number #12-8-26813-D. WALLACE has an extensive criminal history to include, but not limited to the following: Aggravated assault with a deadly weapon, burglary of a habitation, possession of marijuana, delivery of marijuana, manufacturer or delivery of a controlled substance in PG-1 more than 4 grams but less than 200 grams and evading arrest or detention.
> ***
> Special Agents with the Texas Department of Public Safety have reason to believe that WALLACE is currently attempting to thwart law enforcement efforts in apprehending him. . . . Wallace has absconded from his resident home in Victoria, Texas to Austin, Texas. This information is based on a source of information (SOI) that has proven reliable in the past and further furnished a phone number for WALLACE, XXX-XXX-3402.
> ***
> It is the belief of affiant that the information sought is material to an ongoing search for a violent fugitive Felon. Affiant believes the information sought will assist to identify where the fugitive is located in order to apprehend him and protect the public from harm.

D.E. 41-2, pp. 8–9.

On May 6, 2015, the 390th District Court of Travis County, Texas granted a Ping Order authorizing the following: (1) installation and use of a trap device and conditional pen register; (2) release of customer records and other information pertaining to a mobile communications

device; and (3) disclosure of precision-location/E-911 records for the telephone number XXX-XXX-3402. D.E. 41-2, pp. 10–14.

On or about May 7, 2015, Defendant's cellular provider informed SA Rodriguez that the telephone number XXX-XXX-3402 had been disconnected. SA Hallett contacted the SOI, who provided him with a new phone number for Defendant. On May 8, 2015, SA Rodriguez submitted a second application for a Ping Order. Rodriguez' Peace Officer's Affidavit for Court Order was essentially identical to the first, with the addition of the following language:

> Wallace has since acquired a new phone number that is on the AT&T carrier plan, XXX-XXX-2295.
>
> ***
>
> Affiant knows through his training and experience that individuals involved in criminal activity tend to drop their phones frequently in order to thwart law enforcement's efforts to accurately determine their location and the criminal activity that they are associated with. It is believed that the phone number XXX-XXX-2295 is being utilized by WALLACE and that the SOI is giving truthful and reliable information as the SOI has done in the past.

D.E. 41-3. p.9. On May 8, 2015, the Travis County Court granted a Ping Order for the telephone number XXX-XXX-2295.

On May 12, 2015, AT&T notified SA Rodriguez that the cell phone XXX-XXX-2295 was pinging on a cell tower in a remote location on U.S. Highway 87 north of Victoria. SA Rodriguez advised SA Hallett, who contacted the U.S. Marshals for assistance in responding to the location and executing the arrest warrant if Defendant could be located. SA Hallett and several deputy marshals drove to the location of the ping. Upon arrival, they drove through an open field and observed two males standing near a pond. They also observed a white GMC Yukon that they knew belonged to the Defendant. The owner of the property, Christopher Goodman, drove a four wheel vehicle to the house and told deputies that Defendant was standing near the pond. As deputies drove toward the pond, Defendant ran into the pond and momentarily

disappeared. Deputies ordered Defendant to get out of the water. He did and was arrested under the warrant. Deputies patted down Defendant and found a Winchester Super X .22 magnum caliber round of ammunition in his pocket. A black gun was located in the water approximately one foot from the edge of the pond. Meanwhile, SA Hallett observed a box of ammunition in the center console of the Yukon and an empty holster on the driver's seat. He contacted SA David Taylor with the Bureau of Alcohol, Tobacco, Firearms, and Explosives, who came to the property. Goodman told SA Taylor that Defendant came to his house the night before with a .22 magnum caliber rifle and what looked like a black .380 caliber handgun in a holster, but he had not seen the firearms since Defendant arrived at his house. The black pistol was later identified as a Bersa Thunder .380 semi-automatic pistol, and the ammunition in the pistol matched the ammunition box located in the Yukon.

## II. Defendant's Motion to Suppress

Defendant now moves to suppress all evidence obtained during his arrest on May 12, 2015, including the firearm, ammunition, any statements he made, and any other papers or property. Defendant argues that the Ping Order was issued in violation of Texas Code of Criminal Procedure Article 18.21 and is inconsistent with 18 U.S.C. Sections 2703(d) and 3122(b)(2) because the information SA Rodriguez supplied to the state court in seeking the Ping Order did not constitute specific and articulable facts, and law enforcement sought the cellular data for the sole purpose of locating Defendant because he was the subject of an open arrest warrant for violation of probation—not as part of an ongoing criminal investigation. Defendant further argues that he has a reasonable expectation of privacy in his movements and location, and this information is protected under the Fourth Amendment. According to Defendant, Texas Code

of Criminal Procedure Art. 18.21 and 18 U.S.C. §§ 2703(d) and 3122 are therefore unconstitutional because their standards require less than probable cause.[1]

**III. Analysis**

"In a case in which the Government is seeking [cellular site location information] to track a person so that an arrest warrant may be executed, it will be sufficient if the warrant affidavit demonstrates the existence of the warrant, and probable cause to believe that the target phone is in the possession of the fugitive." *In re Application of U.S. for an Order: (1) Authorizing Use of a Pen Register & Trap & Trace Device; (2) Authorizing Release of Subscriber & Other Info.; & (3) Authorizing Disclosure of Location-Based Servs.*, 727 F. Supp. 2d 571, 584, n.22 (W.D. Tex. 2010); *see also United States v. Bermudez*, 2006 WL 3197181, at *11 (S.D. Ind. Jun. 30, 2006) *aff'd sub nom. United States v. Amaral-Estrada*, 509 F.3d 820 (7th Cir. 2007) ("The Arrest Warrant gave law enforcement the authority to physically enter a target's home in order to search for the target . . . and also gave law enforcement the authority to conduct a less intrusive search for the fugitive by tracking cell location information in an effort to locate him, even if it invaded the apartment he rented.").

Here, the Ping Order application stated that Defendant currently had an active arrest warrant and that SA Rodriguez believed Defendant was using telephone number XXX-XXX-2295 based on information received from a SOI who had proved reliable in the past. A copy of Defendant's arrest warrant was admitted into evidence at the hearing, showing that the warrant was for "violation for condition(s) of community supervision for the offense for which said person is on community supervision in this case, to-wit: UNLAWFUL DELIVERY OF CONTROLLED SUBSTANCE IN PENALTY GROUP 1 . . . ." D.E. 41-1. SA Hallett and SA

---

1. In his original motion to suppress, Defendant also claimed that a search warrant was necessary to enter Christopher Goodman's land; however, he withdrew this argument at the hearing.

Rodriguez both testified that they did not see a copy of the warrant until the hearing on Defendant's motion to suppress; however, the DPS databases they searched indicated that the warrant was for unlawful delivery of a controlled substance.

Defendant argues that the fact that the arrest warrant was for a probation violation, and not for "an ongoing criminal investigation" into a new crime, renders the arrest warrant insufficient to support the Ping Order. *See* 18 U.S.C. § 3123(a)(2) (providing that a ping order shall issue "if the court finds that the State law enforcement or investigative officer has certified to the court that the information likely to be obtained by such installation and *use is relevant to an ongoing criminal investigation*" (emphasis added); TEX. CODE CRIM. PROC. art. 18.21(2)(c)(3) ("The application must state . . . that the installation and use of the device or equipment will likely produce information *that is material to an ongoing criminal investigation*.") (emphasis added).

Even assuming Defendant is correct that "the arrest warrant didn't suffice to authorize the use of a tracking device, the evidence gathered would nonetheless withstand suppression because no exclusionary rule applies to the seizure of such evidence." *Bermudez*, 2006 WL 3197181, at *11. As the Fifth Circuit recently explained:

> [S]uppression is not a remedy for a violation of the Stored Communications Act. The Act has a narrow list of remedies, and—unlike the Wiretap Act, *see* 18 U.S.C. § 2515—suppression is not among them. *See* 18 U.S.C. § 2707(b) (listing "appropriate relief" as "equitable or declaratory relief," "damages," and "reasonable attorney's fee and other litigation costs reasonably incurred"); 18 U.S.C. § 2708 (providing that the "remedies and sanctions described in this chapter are the only judicial remedies and sanctions for nonconstitutional violations of this chapter"); *see also United States v. Smith,* 155 F.3d 1051, 1056 (9th Cir. 1998) (concluding that suppression is not available under the Act); *United States v. Jones*, 908 F. Supp. 2d 203, 209 (D.D.C. 2012) (same). There is no basis for judicial imposition of the exclusionary rule for a statutory violation when Congress has not provided that remedy.

*United States v. Guerrero*, 768 F.3d 351, 358 (5th Cir. 2014), *cert. denied*, 135 S. Ct. 1548 (2015).

Regarding Defendant's argument that Texas Code of Criminal Procedure Article 18.21 and 18 U.S.C. Sections 2703(d) and 3122(b)(2) are unconstitutional, the Fifth Circuit has explicitly rejected the claim that the collection of cellular site location information violates the Fourth Amendment:

> In *Historical Cell Site*, we held that "Section 2703(d) orders to obtain *historical* cell site information for specified cell phones at the points at which the user places and terminates a call are not categorically unconstitutional." [*In re Application of the U.S. for Historical Cell Site Data*,] 724 F.3d 600, 615 (5th Cir. 2013). . . . Although our holding in *Historical Cell Site* was decided only in the context of reviewing the denial of applications for Section 2703(d) orders, it nonetheless encompasses the exact issue before us now: whether *historical* cell site information—that is, a record that the "provider has already created"—is subject to a reasonable expectation of privacy that implicates the Fourth Amendment. *Id.* at 612; *see id.* at 615.

*Guerrero*, 768 F.3d at 358–59 (holding the district court properly admitted historical cell site location data at trial). Accordingly, Defendant is not entitled to suppression on this ground.

## V. Conclusion

For the reasons set forth above, Defendant's motion and amended motion to suppress (D.E. 28, 37) are **DENIED**.

It is so **ORDERED**.

**SIGNED** this 1st day of February, 2016.

_____
JOHN D. RAINEY